**Nos. 13-2190(L), 13-2191**

# United States Court of Appeals for the Fourth Circuit

UNITED STATES OF AMERICA,

*Intervenor/Plaintiff – Appellant,*

*and*

UNITED STATES EX REL. OMAR BADR,

*Plaintiff*

*v.*

TRIPLE CANOPY, INC.,

*Defendant – Appellee.*

*On Appeal from the United States District Court for the Eastern District of Virginia at Alexandria in Case No. 1:11-CV-00288-GBL-JFA (Hon. Gerald Bruce Lee, U.S. District Court Judge)*

## SUPPLEMENTAL BRIEF OF APPELLEE TRIPLE CANOPY, INC.

Tara M. Lee
Jonathan G. Cooper
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
777 6th Street, NW, 11th Floor
Washington, DC 20001
202.538.8000 Tel.
202.538.8100 Fax
taralee@quinnemanuel.com
*Counsel for Appellee*

August 19, 2016

TABLE OF CONTENTS

Table of Authorities.................................................................................................. ii

Introduction ...............................................................................................................1

Background ...............................................................................................................1

Argument...................................................................................................................3

    I.     *Escobar*'s twin holdings: specificity and materiality............................3

    II.    Under *Escobar*, the dismissal of this case should be affirmed .............7

          A.    Triple Canopy did not submit a claim for payment making specific misleading representations about the services provided.....................................................................7

          B.    The alleged misrepresentation does not satisfy *Escobar*'s demanding and rigorous materiality standard...........................10

    III.   Alternatively, this Court should remand to allow the district court to apply *Escobar* in the first instance..........................................14

Conclusion ..............................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Allison Engine Co. v. United States ex rel. Sanders*,
  553 U.S. 662 (2008).......................................................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................................11

*G.G. ex rel. Grimm v. Gloucester County School Board*,
  822 F.3d 709 (4th Cir. 2016).........................................................................14

*Triple Canopy, Inc. v. United States ex rel. Badr*,
  136 S. Ct. 2504 (2016)....................................................................................3

*United States ex rel. Badr v. Triple Canopy, Inc.*,
  775 F.3d 628 (4th Cir. 2015)................................................................. passim

*United States ex rel. Butler v. Hughes Helicopters, Inc.*,
  71 F.3d 321 (9th Cir. 1995).............................................................................9

*United States ex rel. Carter v. Halliburton Co.*,
  2009 WL 2240331 (E.D. Va. July 23, 2009) ................................................10

*United States ex rel. Creighton v. Beauty Basics Inc.*,
  2016 WL 3519365 (N.D. Ala. June 28, 2016)..............................................10

*United States ex rel. Doe v. Health First, Inc.*,
  2016 WL 3959343 (M.D. Fla. July 22, 2016) ................................................4

*United States ex rel. Dresser v. Qualium Corp.*,
  2016 WL 3880763 (N.D. Cal., July 18, 2016) .............................................12

*United States ex rel. Hartpence v. Kinetic Concepts, Inc.*,
  792 F.3d 1121 (9th Cir. 2015) (en banc)......................................................15

*United States ex rel. Oberg v. Kentucky Higher Education Student Loan Corp.*,
  681 F.3d 575 (4th Cir. 2012).........................................................................15

*United States ex rel. Palmieri v. Alpharma, Inc.*,
  --- F. App'x ----, 2016 WL 1637995 (4th Cir. April 26, 2016)......................14

*United States ex rel. SNAPP, Inc. v. Ford Motor Co.*,
    532 F.3d 496 (6th Cir. 2008) .................................................................................. 15

*United States ex rel. Stebner v. Stewart & Stephenson Services, Inc.*,
    144 F. App'x 389 (5th Cir. 2005) ............................................................................ 10

*United States ex rel. Winkelman v. CVS Caremark Corp.*,
    --- F.3d ----, 2016 WL 3568145 (1st Cir. June 30, 2016) ................................. 6

*United States v. Cannon*,
    41 F.3d 1462 (11th Cir. 1995) .................................................................................. 9

*United States v. Scientific Applications International Corp.*,
    626 F.3d 1257 (D.C. Cir. 2010) ............................................................................... 3

*Universal Health Services, Inc. v. United States ex rel. Escobar*,
    136 S. Ct. 1989 (2016) ..................................................................................... passim

**Statutes**
37 U.S.C. § 3729(a)(1)(A) .................................................................................................. 4

**Rules**
Federal Rule of Civil Procedure 8 ................................................................................ 6, 11, 12

Federal Rule of Civil Procedure 9(b) ......................................................................... 6, 11, 12

**INTRODUCTION**

On June 27, 2016, the Supreme Court vacated this Court's previous judgment in this case and remanded for further consideration in light of its decision in *Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016). In *Escobar*, the Supreme Court set a new standard for False Claims Act lawsuits that rely on the implied false certification theory of liability. As relevant here, to rely on that theory (1) the defendant must submit "a claim for payment that makes specific representations about the . . . services provided, but knowingly fails to disclose the defendant's noncompliance with a . . . contractual requirement" and "the omission renders those representations misleading"; and (2) that misrepresentation must be "material to the Government's payment decision." 136 S. Ct. at 1995–96. The Supreme Court went on in *Escobar* to "clarify" just how "demanding" and "rigorous" this materiality standard is. *Id.* at 1196, 2002–04 & n.6.

In this case, the plaintiffs rely on the implied false certification theory of liability, but their allegations do not satisfy either of the *Escobar* criteria. Accordingly, *Escobar* dictates affirmance of the dismissal of this case. Alternatively, this Court could remand to the district court to apply *Escobar* in the first instance.

**BACKGROUND**

In 2011, Omar Badr sued Triple Canopy, Inc., for allegedly violating the False Claims Act by (1) invoicing the Government for guards at the Al Asad Airbase in

1

Iraq who did not meet a contractual marksmanship requirement and (2) fabricating scorecards that indicated that the Al Asad guards were qualified. JA9–16.[1] The Government intervened and filed an amended complaint that alleged that these actions at Al Asad violated the False Claims Act. JA45–46.[2]

Judge Lee of the Eastern District of Virginia dismissed the Government's False Claims Act claims for failing "to sufficiently allege with specificity the presentment of a false claim or that any false records were material to claims for payment." JA244; *see also* JA226–36, 239–42.

This Court reversed. *United States ex rel. Badr v. Triple Canopy, Inc.*, 775 F.3d 628 (4th Cir. 2015).[3] Relying on pre-*Escobar* case law from other circuits, the panel held that a plaintiff states a viable claim under the False Claims Act by alleging that a contractor "made a request for payment under a contract and 'withheld information about its noncompliance with material contractual requirements.'" *Id.* at 636 (quoting *United States v. Scientific Applications International Corp.*, 626 F.3d

---

[1]  Badr also alleged, in Counts II–V of his Complaint, violations of the False Claims Act at four other sites in Iraq (Cobra, Kalsue, Delta, and Basra). JA17–22.

[2]  The Government also alleged five common-law claims in Counts III–VII of its Complaint. JA46–50. The district court dismissed these claims, *see* JA245–46, and the Government did not appeal their dismissal.

[3]  Separately, this Court affirmed the dismissal of Counts II–V of Badr's Complaint for not being pleaded with sufficient particularity under Federal Rule of Civil Procedure 9(b). 775 F.3d at 640. *Escobar* did not diminish the Rule 9(b) particularity requirements, so this Court should reinstate the portion of its judgment affirming the dismissal of Counts II–V of Badr's Complaint.

2

1257, 1266 (D.C. Cir. 2010)). The panel found this standard met here because Triple Canopy's contract with the Government "lists the marksmanship requirement as a 'responsibility' Triple Canopy must fulfill under the contract," but Triple Canopy "did not satisfy this requirement and, instead, undertook a fraudulent scheme that included falsifying records to obscure its failure." *Id.* at 637. The panel also concluded that this misrepresentation was material both as a matter of "common sense" and because "[i]f Triple Canopy believed that the marksmanship requirement was immaterial to the Government's decision to pay, it was unlikely to orchestrate a scheme to falsify records on multiple occasions." *Id.* at 637–38.[4]

Triple Canopy petitioned the Supreme Court for certiorari. On June 16, 2016, the Court handed down its opinion in *Escobar*. 136 S. Ct. 1989 (2016). Eleven days later it granted certiorari in this case, vacated this Court's judgment, and remanded "for further consideration in light of [*Escobar*]." *Triple Canopy, Inc. v. United States ex rel. Badr*, 136 S. Ct. 2504 (2016).

## ARGUMENT

**I.      *Escobar*'s twin holdings: specificity and materiality**

At issue in *Escobar* was the validity and scope of "a theory of False Claims Act liability commonly referred to as 'implied false certification.'" 136 S. Ct. at

---

    [4] The Court also reinstated Badr as a party to the Al Asad claims. 775 F.3d at 638. His Al Asad claims should be dismissed under *Escobar* for the same reasons as the Government's Al Asad claims.

3

1995. According to this theory, if a government contractor violates a requirement of its contract and submits a claim for payment to the government without disclosing the violation, then the contractor has submitted a "false or fraudulent" claim for payment in violation of the False Claims Act, 37 U.S.C. § 3729(a)(1)(A). *Id.*

In *Escobar*, the Supreme Court allowed a plaintiff to rely on this theory, but only if it met a specificity requirement: "the implied certification theory can be a basis for liability, at least where two conditions are satisfied: first, *the claim does not merely request payment, but also makes specific representations about the goods or services provided*; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements *makes those representations misleading half-truths*." 136 S. Ct. at 2001 (emphasis added); *accord United States ex rel. Doe v. Health First, Inc.*, 2016 WL 3959343, at *3 (M.D. Fla. July 22, 2016) ("[*Escobar*] explained that two conditions must exist to impose liability under the Certification Theory.").

The facts in *Escobar* are crucial to understanding this specificity holding. Yarushka Rivera, a teenager who received Medicaid benefits, died after an adverse reaction to medication prescribed by a purported doctor at Arbour Counseling Services, a mental health facility. 136 S. Ct. at 1997. As a Medicaid provider, Arbour submitted claims for reimbursement to the Government. Arbour's claims were chock full of specific representations, including both "payment codes corresponding to

4

different services that its staff provided to Yarushka, such as 'Individual Therapy' and 'family therapy,'" and also "National Provider Identification numbers," which "correspond to specific job titles." *Id.* These payment codes and Identification numbers were misleading. "For instance, one Arbour staff member who treated Yarushka registered for a number associated with 'Social Worker, Clinical,' despite lacking the credentials and licensing required for social workers engaged in mental health counseling." *Id.* "Likewise, the practitioner who prescribed medicine to Yarushka, and who was held out as a psychiatrist, was in fact a nurse who lacked authority to prescribe medications absent supervision." *Id.* Arbour's use of payment codes and Identification numbers in its Medicaid reimbursement claims were thus "clearly misleading in context," as they specifically represented to the Government that staff members with specific job titles had provided specific medical services when, in fact, they lacked the requisite licenses to hold those job titles or perform those services. *Id.* at 2000.

The specificity of the representations in Arbour's reimbursement claims was the only reason the Court did not immediately dismiss the case. There would have been no False Claims Act violation if Arbour had "merely request[ed] payment" in its Medicaid reimbursement claims. *Id.* at 2001. What transformed Arbour's reimbursement claims into fraudulent requests for payment under the False Claims Act was the presence of "specific representations about the . . . services provided"

5

in the claims—namely, the payment codes and Identification numbers—that were "misleading half-truths." *Id.*

*Escobar* also held that the misrepresentation must be "material." *Id.* at 2002. A misrepresentation is material if it affects the Government's decision to pay an invoice. *Id.* at 2002–03. This standard is "demanding": "A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the *option* to decline to pay if it knew of the defendant's noncompliance." *Id.* at 2003 (emphasis added). What matters, in other words, is not whether the Government *could* decline to pay if it knew of the misrepresentation, but rather whether it *would* decline to pay. *See United States ex rel. Winkelman v. CVS Caremark Corp.*, --- F.3d ----, 2016 WL 3568145, at *8 (1st Cir. June 30, 2016) (information is "material" under *Escobar* if it "is sufficiently important to influence the behavior of the recipient"). The Supreme Court also stressed that this "rigorous" standard is not "too fact intensive for courts to dismiss False Claims Act cases on a motion to dismiss." 136 S. Ct. at 2004 n.6. After all, "False Claims Act plaintiffs must . . . plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b) by, for instance, pleading facts to support allegations of materiality." *Id.* The failure to plead such facts warrants dismissal. *Id.*

6

The Supreme Court was uncertain whether the plaintiffs in *Escobar* had satisfied this demanding materiality standard, so it remanded to the lower courts to decide "in the first instance" whether the plaintiffs had pleaded a material misrepresentation. *Id.* at 2004. The Court's decision to remand this issue contrasts sharply with its ruling on specificity. The Court had found it so clear that Arbour's use of payment codes and Identification numbers were specific misleading representations that it saw no need to remand that issue for an initial determination by the lower courts, *id.* at 2000, but with materiality it was less sure. This illustrates just how demanding and rigorous the materiality requirement is.

**II.    Under *Escobar*, the dismissal of this case should be affirmed**

    **A.    Triple Canopy did not submit a claim for payment that made specific misleading representations about the services provided**

The facts alleged in this case are of a completely different nature than those in *Escobar*. Here, the payment claims Triple Canopy submitted contain no specific representations at all about the services provided, let alone a representation that the guards provided at Al Asad Airbase satisfied the contractual marksmanship requirement that the Government now alleges they did not meet.

Triple Canopy made its claims for payment in this case via twelve invoices. JA41–42. As the district court correctly held, these invoices "did not contain factually false statements." JA228. "The invoices identified the quantity of guards provided, the unit price for each guard, the period of service that each guard

7

performed, and the amount for the guards' services." JA228–29 (citing JA40). "Notably, the Government does not allege that [Triple Canopy] billed for anything other than what [Triple Canopy] delivered. That is, the Government does not contend that [Triple Canopy] invoiced a fraudulent number of guards or billed for a fraudulent sum of money." JA229.

To get around the lack of a false statement, the Government argued that Triple Canopy implicitly certified satisfaction of the contractual marksmanship requirement by billing in its invoices for "guards," but the district court correctly rejected this argument because the term "guard" is not defined in the invoices or in Triple Canopy's contract with the Government, and certainly is not defined to require a guard to pass a particular marksmanship requirement. JA231. This case thus differs dramatically—and dispositively—from *Escobar*. There the contractor billed for services performed by staff with specific job titles that required specific licenses; the staff lacked the requisite licenses, so the reimbursement claims were misleading on their face. 136 S. Ct. at 1997. Here, Triple Canopy's invoices contained no specific representations—no payment codes, Identification numbers, or their equivalent—that were misleading or otherwise fraudulent.

In its vacated opinion, this Court overcame the lack of a specific misleading representation in Triple Canopy's invoices by pointing to the fact that the underlying contract "lists the marksmanship requirement as a 'responsibility' Triple Canopy

8

must fulfill under the contract." 775 F.3d at 637. *Escobar* makes clear, however, that this is not enough. The contractor's claim for payment must make "*specific representations* about the . . . services provided" and those representations must be "misleading half-truths." 136 S. Ct. at 2001 (emphasis added). A breached contractual requirement is not enough. There is no liability under the False Claims Act unless the contractor makes a specific and misleading representation in the claim for payment. Triple Canopy did not do that here.

The Government has also argued that even if Triple Canopy's invoices themselves were faultless, Triple Canopy is still liable because it submitted with its invoices a standard Department of Defense form known as a "DD-250" that certified that the services provided "conform to contract." JA57–80 (DD-250s). But as the district court correctly held, it was the *Government*—not *Triple Canopy*—that made the certifications in the DD-250s after inspecting Triple Canopy's performance, and thus "any statement contained in the DD-250s, whether true or false, was not made by [Triple Canopy]." JA230. Accordingly, the district court rightly ruled that "the DD-250 cannot in and of itself rescue the false claim allegation." JA230. Courts across the country have taken the same view and rejected False Claims Act claims predicated on an alleged falsehood in a DD-250 submitted with a separate invoice. *E.g.*, *United States ex rel. Butler v. Hughes Helicopters, Inc.*, 71 F.3d 321, 330 (9th Cir. 1995); *United States v. Cannon*, 41 F.3d 1462, 1468 (11th Cir. 1995); *United*

9

*States ex rel. Stebner v. Stewart & Stephenson Services, Inc.*, 144 F. App'x 389, 391, 394 (5th Cir. 2005); *United States ex rel. Carter v. Halliburton Co.*, 2009 WL 2240331, at *12 (E.D. Va. July 23, 2009).

For these reasons, the claims in this case fall short of *Escobar*'s specificity requirement, and the district court's judgment of dismissal should be affirmed. *See United States ex rel. Creighton v. Beauty Basics Inc.*, 2016 WL 3519365, at *3 (N.D. Ala. June 28, 2016) (rejecting False Claims Act claim under *Escobar* for lack of specific misleading representations).

**B.    The alleged misrepresentation does not satisfy *Escobar*'s demanding and rigorous materiality standard**

An additional reason to affirm the district court's judgment is that the Government has failed to allege that any misrepresentation by Triple Canopy was material under the rigorous standard established by *Escobar*.

Although the Supreme Court did not prescribe a bright-line rule for evaluating materiality, *Escobar* offers insight into what would and would not suffice to trigger liability. Rejecting the First Circuit's approach, the Supreme Court held that the fact that "the defendant knows that the Government would be entitled to refuse payment were it aware of the [contractual] violation" is not enough to establish that a misrepresentation is material. 136 S. Ct. at 2004. Materiality could, however, be established by showing that "the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular . . . contractual

10

requirement." *Id.* at 2003. Also "relevant"—albeit "not automatically dispositive"—is whether the Government "expressly identif[ied] a provision as a condition of payment." *Id.* Whatever the basis for asserting materiality, the Government must plead it in the Complaint "with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b)." *Id.* at 2004 n.6.

The Government's allegations fall short of this standard. Its Complaint does not allege that it expressly identified the marksmanship requirement as a condition of payment. Nor does it allege that it routinely withholds payment on the basis of noncompliance with this marksmanship requirement. Indeed, the marksmanship certifications for these "guards" were of so little importance to the Government that it does not even allege that it ever reviewed them. As the district court found, it is "glaring" that the Government's Complaint omits "any allegation that anyone in the Government actually viewed" the guards' marksmanship certification. JA241.

The Government does baldly assert that Triple Canopy's purported misrepresentation "was material . . . to the [Government's] decisions to pay [Triple Canopy's] claims for payment," but it does not offer any factual support for this conclusory assertion—for example, that the Government has routinely refused to pay similarly-situated claims. JA40. Such "naked assertions devoid of further factual enhancement" do not satisfy Rule 8, let alone Rule 9(b). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). *Escobar*'s rigorous and

11

demanding materiality standard requires more. *See United States ex rel. Dresser v. Qualium Corp.*, 2016 WL 3880763, at *6 (N.D. Cal., July 18, 2016) ("The Amended Complaint alleges in several places that the government would not have paid Defendants' claims had they known of Defendants' fraudulent conduct, but does not explain why. This does not meet [*Escobar*'s] heightened materiality standard.").

In its vacated decision, this Court gave two reasons for finding Triple Canopy's alleged misrepresentation to be material: (1) "common sense strongly suggests that the Government's decision to pay a contractor for providing base security in an active combat zone would be influenced by knowledge that the guards could not, for lack of a better term, shoot straight"; and (2) "Triple Canopy's actions in covering up the guards' failure to satisfy the marksmanship requirement suggests its materiality," as "[i]f Triple Canopy believed that the marksmanship requirement was immaterial to the Government's decision to pay, it was unlikely to orchestrate a scheme to falsify records on multiple occasions." 775 F.3d at 637–38.

Neither of these reasons suffices under *Escobar*. "Common sense" is insufficient because, under Rules 8 and 9(b), a plaintiff must "plead[] *facts* to support allegations of materiality," such as factual allegations that the Government regularly denies payment when contractors botch the marksmanship requirement. 136 S. Ct. at 2004 n.6 (emphasis added). Intuition about how the Government conceivably could react to knowledge of a particular contractual violation cannot satisfy the

12

plaintiff's burden of pleading with particularity facts showing that the Government actually would treat this issue as material. While this Court was unaided before about how to assess materiality, *Escobar* teaches that a court's analysis must be based on a rigorous review of the facts alleged in the Complaint.

The only pleaded facts this Court's prior opinion relied on in its materiality analysis concerned the views not of the *Government* but of *Triple Canopy*. This Court reasoned that "Triple Canopy believed" the misrepresentation may be material, as otherwise "it was unlikely to orchestrate a scheme to falsify records on multiple occasions." 775 F.3d at 638. But *Escobar* makes clear that whether a contractor *thinks* the Government could withhold payment is not enough: "[We] disagree with the Government's and First Circuit's view of materiality: that any . . . contractual violation is material so long as the defendant knows that the Government would be entitled to refuse payment were it aware of the violation." 136 S. Ct. at 2004. As explained above, what matters is not whether the Government *could* have withheld payment had it known of the misrepresentation, but rather whether the Government has alleged facts showing that it likely *would* have withheld payment.

The Supreme Court went out of its way in *Escobar* to emphasize that "[t]he False Claims Act is not 'an all-purpose antifraud statute' or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Id.* at 2003 (quoting *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 672 (2008)).

13

Contractors cannot be held liable under the False Claims Act for failing to comply with every applicable contractual requirement. Yet here, the Government has not pleaded any facts in its Complaint that single out the particular alleged violation of the marksmanship requirement as being more material to the Government's payment decision than a violation of any of the other provisions of Triple Canopy's contract. If this Court holds that the Government's meager pleadings here satisfy the *Escobar* standard, then every case alleging a contractual violation of any kind would also pass muster. Such a capacious view of the False Claims Act is precisely what the Supreme Court sought to stamp out when it held in *Escobar* that "[t]he False Claims Act does not adopt such an extraordinarily expansive view of liability." *Id.* at 2004.

## III. Alternatively, this Court should remand to allow the district court to apply *Escobar* in the first instance

This Court is a "court of review, not of first view." *G.G. ex rel. Grimm v. Gloucester County School Board*, 822 F.3d 709, 717 n.3 (4th Cir. 2016) (citation omitted). Thus, when this Court confronts an argument for dismissal that a district court has not considered (either because it did not assess the argument at all or did not assess under the correct standard), the typical course is to remand to allow the lower court to decide in the first instance. That is the practice this Court and other circuits have followed in prior False Claims Act cases. *E.g.*, *United States ex rel. Palmieri v. Alpharma, Inc.*, --- F. App'x ----, 2016 WL 1637995, at *1 (4th Cir. April 26, 2016); *United States ex rel. Oberg v. Kentucky Higher Education Student Loan*

14

*Corp.*, 681 F.3d 575, 581 (4th Cir. 2012); *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121, 1129–31 (9th Cir. 2015) (en banc); *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 509 (6th Cir. 2008).

Indeed, in *Escobar* itself, rather than apply the new materiality standard it had articulated, the Supreme Court vacated the judgment below and remanded so that the lower courts could decide in the first instance. 136 S. Ct. at 2004. If this Court does not affirm, then it should follow the Supreme Court's lead and remand to the Eastern District of Virginia so that the district court can take the first crack at applying the new *Escobar* standard to this case.

## CONCLUSION

In sum, this Court should affirm the district court's judgment of dismissal. Alternatively, it can remand to the district court to apply *Escobar* in the first instance.

Dated: August 19, 2016                Respectfully submitted,

/s/ Tara M. Lee
Tara M. Lee
Jonathan G. Cooper
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
777 Sixth Street NW, 11th Floor
Washington, DC 20001
202.538.8000 Tel.
202.538.8100 Fax
taralee@quinnemanuel.com

*Counsel for Appellee*

15

## CERTIFICATE OF SERVICE

I certify that on August 19, 2016, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

Additionally, paper copies have been mailed via U.S. Express Mail to counsel for all parties at the following addresses:

| | |
|---|---|
| Paul A. Prados | Michael S. Raab |
| Earl "Trey" Mayfield | Charles W. Scarborough |
| Milt C. Johns | Civil Division, Room 7244 |
| Christopher M. Day | U.S. Department of Justice |
| DAY & JOHNS, PLLC | 950 Pennsylvania Avenue, NW |
| 10560 Main Street, Suite 218 | Washington, DC 20530 |
| Fairfax, VA 22030 | |
| 703-268-5600 | |
| | Dana J. Boente |
| | Richard W. Sponseller |
| | Peter S. Hyun |
| | U.S. Attorney's Building |
| | 2100 Jamieson Avenue |
| | Alexandria, VA 22314 |

Dated: August 19, 2016        /s/ Tara M. Lee
                              Tara M. Lee