Nos. 13-2190(L), 13-2191

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————————

UNITED STATES EX REL. OMAR BADR,

Plaintiffs-Appellants,

v.

TRIPLE CANOPY, INC.,

Defendant-Appellee.

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

————————————

**SUPPLEMENTAL BRIEF FOR THE UNITED STATES**

————————————

DANA J. BOENTE
*United States Attorney*

RICHARD W. SPONSELLER
GERARD MENE
CHRISTINE ROUSHDY
*Assistant United States Attorneys*
U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, VA 22314

BENJAMIN C. MIZER
*Principal Deputy Assistant
Attorney General*

MICHAEL S. RAAB
CHARLES W. SCARBOROUGH
(202) 514-1927
*Attorneys, Appellate Staff*
Civil Division, Room 7244
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC  20530

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION AND SUMMARY ........................................................... 1

STATEMENT ............................................................................................. 3

ARGUMENT ............................................................................................. 7

    The United States' Complaint Adequately States Claims Under The
    Implied False Certification Theory Approved In *Escobar* .................... 7

    A.    The United States' complaint sufficiently pleads falsity ........... 8

    B.    The United States' complaint sufficiently pleads materiality
        and that Triple Canopy knew its violations were material ........ 9

CONCLUSION ......................................................................................... 15

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                                                    **Page(s)**

*Junius Constr. Co. v. Cohen,*
  257 N.Y. 393 (1931) ................................................................... 13

*Kungys v. United States,*
  485 U.S. 759 (1988) ................................................................ 11, 12

*Neder v. United States,*
  527 U.S. 1 (1999) ......................................................................... 11

*United States ex rel. Badr v. Triple Canopy, Inc.,*
  775 F.3d 628 (4th Cir. 2015) ...............................................passim

*United States ex rel. Badr v. Triple Canopy,*
  950 F. Supp. 2d 888 (E.D. Va. 2013) ........................................... 5

*United States ex rel. Feldman v. Van Gorp.,*
  697 F.3d 78 (2d Cir. 2012) .......................................................... 12

*United States ex rel. Harrison v. Westinghouse Savannah River Co.,*
  352 F.3d 908 (4th Cir. 2003) ...................................................... 12

*United States ex rel. Longhi v. United States,*
  575 F.3d 458 (5th Cir. 2009) ...................................................... 12

*United States ex rel. Loughren v. Unum Group,*
  613 F.3d 300 (1st Cir. 2010) ....................................................... 12

*United State ex rel. Matheny v. Medco Health Solutions, Inc.,*
  671 F.3d 1217 (11th Cir. 2012) ................................................... 12

*United States v. Rogan,*
  517 F.3d 449 (7th Cir. 2008) ...................................................... 12

*United States v. Science Applications Int'l Corp.,*
  626 F.3d 1257 (D.C. Cir. 2010)..................................................... 6

*Universal Health Services, Inc. v. United States ex rel. Escobar,*
136 S. Ct. 1989 (2016) ...............................................................................passim

**Statutes:**

31 U.S.C. § 3729(a)(1) ........................................................................... 5

31 U.S.C. § 3729(a)(1)(A)................................................................5, 8, 11

31 U.S.C. § 3729(a)(1)(B)................................................................5, 7, 8

31 U.S.C. § 3729(b)(4)......................................................................10, 11

**Other Authorities:**

26 R. Lord, Williston on Contracts § 69:12 (4th ed. 2003) ............................................ 12

## INTRODUCTION AND SUMMARY

The United States respectfully submits this response to the Court's July 29, 2016 order directing the parties to file supplemental briefs by August 19, 2016 "addressing the impact of *Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016)."

In *Escobar*, the Supreme Court validated the "implied false certification" theory of FCA liability, holding that a defendant may be liable under that theory where it "submits a claim for payment that makes specific representations about the goods or services provided, but knowingly fails to disclose the defendant's noncompliance with a statutory, regulatory, or contractual requirement." *Id.* at 1996. The Court also held that "False Claims Act liability does not turn upon whether those requirements were expressly designated conditions of payment." *Id.* "What matters," the Court explained, "is not the label the Government attaches to a requirement, but whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision." *Id.* After identifying various factors relevant to the materiality inquiry, the Court vacated the First Circuit's decision in *Escobar* and remanded. The Court also granted the petition for certiorari pending in this case, vacated this Court's prior decision, and remanded for further consideration.

Applying the Supreme Court's guidance, this Court should again hold that the United States' complaint in this case adequately states claims under the FCA. In its prior decision, this Court adopted the implied false certification theory of liability,

1

holding that "the Government pleads a false claim when it alleges that the contractor, with the requisite scienter, made a request for payment under a contract and withheld information about its noncompliance with material contractual requirements." *United States ex rel. Badr v. Triple Canopy, Inc.*, 775 F.3d 628, 636 (4th Cir. 2015) (citation and internal quotations omitted). The Supreme Court has now endorsed that theory. This Court also rejected the argument "that implied representations can give rise to liability only when the condition is expressly designated as a condition of payment," *id.* at 637 n.5, and the Supreme Court also endorsed that view. Finally, this Court concluded that violations of the contractual requirement that guards supplied to protect an Army base must pass a standard marksmanship test are material, explaining that "common sense strongly suggests that the Government's decision to pay a contractor for providing base security in an active combat zone would be influenced by knowledge that the guards could not, for lack of a better term, shoot straight." *Id.* at 637-38. Nothing in the Supreme Court's decision compels a contrary conclusion. Indeed, as explained below, the factors that the Supreme Court identified as relevant to the materiality inquiry only serve to bolster this Court's prior decision.

In the alternative, if this Court has any doubts that the government's complaint sufficiently pleads materiality (or any other required element for FCA liability), the Court should remand to the district court with instructions to allow the United States to file an amended complaint in light of the Supreme Court's recent guidance concerning the factors relevant to the materiality inquiry.

## STATEMENT

In this action under the False Claims Act, the United States alleges that defendant Triple Canopy fraudulently billed the Army for guards to protect a military base in a dangerous area in Iraq while knowing that the individuals it was supplying to perform this critical function had not passed a basic marksmanship test required under the governing contract, and tried to conceal this fraud by creating false marksmanship records. Because the facts and procedural history of this case are fully set forth in this Court's prior decision, we provide only a brief summary below.

1. In June 2009, the United States Army awarded defendant Triple Canopy a one-year contract to provide security for the Al Asad Airbase, the second largest airbase in Iraq.  The relevant task order under the contract, TO-11, required Triple Canopy to perform a variety of security functions, including repelling attacks, providing escorts, performing entrance searches, and preventing theft. *Triple Canopy*, 775 F.3d at 632. Triple Canopy was also required to ensure that the personnel it employed as "guards" received training on the weapons they carried and passed a standard marksmanship test. JA 99. Finally, Triple Canopy had to document the training and marksmanship scores for each "guard" and make those documents available for inspection by government officials.

In an attempt to fulfill TO-11, Triple Canopy hired approximately 332 Ugandan guards to serve at Al Asad. Those guards lacked even the basic ability to "zero" their rifles – that is, to adjust their rifle sights so that bullets would hit the

3

aiming point in a given range. "Thus, shortly after their arrival, Triple Canopy supervisors were aware that the Ugandans could not satisfy the final responsibility of TO-11: the marksmanship requirement." *Triple Canopy*, 775 F.3d at 632.

Triple Canopy instituted a training program in an effort to bring its guards up to the minimum standards required under TO-11. Even after the completion of remedial training, however, none of the Ugandan guards was able to satisfy the marksmanship requirement. *Id.* The new Ugandan guards who arrived during 2009 and 2010 likewise were unable to satisfy the marksmanship requirement. *Id.*

Rather than alerting the Army to these problems, Triple Canopy actively sought to conceal them by creating false marksmanship records for the Ugandan guards. After its first training program failed, a Triple Canopy "supervisor directed that false scorecards be created for the guards and placed in their personnel files." *Id.* After new Ugandan guards arrived and also failed to pass the marksmanship requirement, a supervisor directed more false scorecards to be prepared, "reflecting scores of 30-31 for male guards and 24-26 for the female guards." *Id.* Those scorecards were made available for inspection by the government officer responsible for verifying and accepting services under the contract. *Id.* at 633. During the year that the contract was in effect, Triple Canopy presented 12 monthly invoices totaling approximately $4.4 million for the services ostensibly provided by the Ugandan guards – a rate of approximately $1100 per month for each guard. *Id.*

4

2.  A former employee of Triple Canopy, Omar Badr, filed a *qui tam* action alleging that Triple Canopy knowingly billed the Army for security personnel who did not satisfy basic contractual requirements at several different military sites (including Al Asad), and concealed these deficiencies by falsifying the marksmanship scorecards for its "guards." The United States intervened in part, limiting its allegations to misconduct regarding the provision of security personnel at Al Asad, and added claims under the common law.

The district court dismissed the FCA claims asserted by the United States and the relator. *United States ex rel. Badr v. Triple Canopy*, 950 F. Supp. 2d 888 (E.D. Va. 2013). The court rejected the government's claim under Section 3729(a)(1)(A) on the ground that the complaint "failed to sufficiently plead that Defendant submitted a demand for payment containing an objectively false statement." *Id.* at 890. The court rejected the government's "false records" claim under 31 U.S.C. 3729(a)(1)(B) on the ground that the complaint did not "alleg[e] that the Government reviewed the weapons scorecards for the purposes of issuing payment," and thus failed adequately to allege "reliance upon the allegedly falsified records." *Id.* at 891.

3.  This Court reversed the dismissal of the government's FCA claims. The Court first held that the government adequately alleged that Triple Canopy submitted "false or fraudulent" claims under Section 3729(a)(1). Describing Triple Canopy's claims for payment as a form of "implied certification," the Court stressed "that this label simply recognizes one of the variety of ways in which a claim can be false." *Triple*

5

*Canopy*, 775 F.3d at 635. The Court then adopted the implied certification theory, holding that "the Government pleads a false claim when it alleges that the contractor, with the requisite scienter, made a request for payment under a contract and withheld information about its noncompliance with material contractual requirements." *Id.* at 636. The Court cautioned that this theory should not be used "to turn the violation of minor contractual provisions into an FCA action," but explained that the best protection against that risk is "strict enforcement of the Act's materiality and scienter requirements." *Id.* at 637 (quoting *United States v. Science Applications Int'l Corp.*, 626 F.3d 1257, 1270 (D.C. Cir. 2010)).[1]

Applying the implied certification theory to this case, the Court "readily conclude[d] that the Government ha[d] sufficiently alleged a false claim." *Triple Canopy*, 775 F.3d at 637. The Court found that the complaint adequately alleged falsity because it contained numerous allegations that Triple Canopy did not satisfy the marksmanship requirement and instead "undertook a fraudulent scheme that included falsifying records to obscure its failure." *Id.* The complaint also "properly allege[d] that Triple Canopy's supervisors had actual knowledge of the Ugandan guards' failure to satisfy the marksmanship requirement and ordered the scorecards' falsification." *Id.* Finally, the Court held that the complaint sufficiently pled materiality, since "common

---

[1] In addition, this Court rejected Triple Canopy's argument "that implied representations can give rise to liability only when the condition is expressly designated as a condition of payment," finding that nothing in the language of the FCA requires such a rule." *Id.* at 637 n.5.

6

sense strongly suggests" that the Government would not pay for "guards" that could not shoot straight, *id.* at 637-38, and Triple Canopy's decision to falsify the guards' scorecards confirmed that it knew the marksmanship requirement was material.

This Court also reversed the dismissal of the government's "false records" claim under Section 3729(a)(1)(B), rejecting Triple Canopy's argument that the government's complaint was deficient because it did not specifically allege that a government official actually reviewed and relied upon the falsified scorecards. The Court concluded that "the FCA reaches government contractors who employ false records that are capable of influencing a decision, not merely those who create records that actually do influence the decision." *Triple Canopy*, 775 F.3d at 639.

## ARGUMENT

### The United States' Complaint Adequately States Claims Under The Implied False Certification Theory Approved In *Escobar*.

The Supreme Court's unanimous ruling in *Escobar* largely validates this Court's prior decision allowing the United States to proceed on claims that defendant Triple Canopy violated the False Claims Act by knowingly billing the Army for guards who had not passed a standard marksmanship test required under the governing contract and actively falsifying marksmanship scorecards in order to dupe the Army into paying for services that did not conform to this core contractual requirement.

In *Escobar*, the Supreme Court endorsed the implied false certification theory, holding that this "theory can be a basis for liability, at least where two conditions are

7

satisfied: first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Escobar*, 136 S. Ct. at 2001. As explained below, both conditions are readily satisfied in this case. The invoices Triple Canopy submitted to the Army make specific representations about the "guard" services provided, and violations of the marksmanship requirement were plainly material to the Army's payment decision. Thus, applying the guidance provided in *Escobar*, this Court should again conclude that the United States has plausibly alleged violations of Sections 3729(a)(1)(A) & (B) of the False Claims Act.

## A.    The United States' complaint sufficiently pleads falsity.

The claims Triple Canopy submitted to the Army easily satisfy the first condition the Supreme Court identified for application of the implied certification theory because they "do more than merely demand payment." As in *Escobar*, Triple Canopy's invoices make specific representations about the services provided and they therefore "fall squarely within the rule that half-truths – representations that state the truth only so far as it goes, while omitting critical qualifying information – can be actionable misrepresentations." *Escobar*, 136 S. Ct. at 2001.

The government's complaint specifically describes the twelve monthly invoices submitted by Triple Canopy, JA 40-42 (¶¶ 59-63), and attaches the DD-250 forms submitted with each claim, JA 57-80. Those claims specify the applicable contract

8

number, describe the personnel provided as "guards," list the unit price and the total number of units for each job type of job, and include a box attesting that the items provided "conform to contract, except as noted herein on supporting contract." JA 57 (July 27, 2009 claim). These statements were misleading in context. Just as anyone reviewing the claims forms in *Escobar* "would probably – but wrongly – conclude that the clinic had complied with core Massachusetts Medicaid requirements," *Escobar*, 136 S. Ct. at 2000, anyone reviewing Triple Canopy's claims would probably – but wrongly – conclude that it had provided guards that satisfied the core requirements of the contract, including the marksmanship requirement. By making representations about its performance under the contract while failing to disclose its failure to satisfy the marksmanship requirement, Triple Canopy's claims are "false or fraudulent" under the implied certification theory affirmed in *Escobar*.[2]

### B. The United States' complaint sufficiently pleads materiality and that Triple Canopy knew its violations were material.

The government's complaint also readily satisfies the second condition the Supreme Court identified in *Escobar* for application of the implied certification theory

---

[2] Because the claims in *Escobar* did "more than merely demand payment," the Supreme Court explained that it "need not resolve whether all claims for payment implicitly represent that the billing party is legally entitled to payment." *Escobar*, 136 S. Ct. at 2000. Accordingly, this Court's prior determination that implied certification liability exists where a party "withheld information about its noncompliance with material contractual requirements," *Triple* Canopy, 775 F.3d at 676, remains valid. However, this Court need not rely on this alternative basis for liability since the claims here plainly fall with the category of implied certification claims affirmed by *Escobar*.

because it alleges that Triple Canopy violated a material contractual term – the requirement that all security personnel must pass a standard marksmanship test.

In its prior decision, this Court held that the United States adequately pled that Triple Canopy's violations of the marksmanship requirement were material. Citing the definition of materiality in 31 U.S.C. § 3729(b)(4), this Court held that the complaint satisfied that standard because "common sense strongly suggests that the Government's decision to pay a contractor for providing base security in an active combat zone would be influenced by knowledge that the guards could not, for lack of a better term, shoot straight." *Triple Canopy*, 775 F.3d at 637-38. Moreover, this Court properly recognized that "Triple Canopy's actions in covering up the guards' failure to satisfy the marksmanship requirement" was strong, if not dispositive, evidence that this requirement was material to payment. *Id.* at 638.

Nothing in *Escobar* calls any of these conclusions into question. On the contrary, the Supreme Court's decision confirms this Court's common-sense finding that violations of the marksmanship requirement are material.

In *Escobar*, the Supreme Court cited the definition of materiality in Section 3729(b)(4) and noted that the "natural tendency" and "capable of influencing" concepts in that definition are derived from the common law and are used in other federal fraud statutes. *Escobar*, 136 S. Ct. at 2002 (citing *Neder v. United States*, 527 U.S. 1, 16 (1999); *Kungys v. United States*, 485 U.S. 759, 770 (1988)). The Court found it unnecessary to "decide whether § 3729(a)(1)(A)'s materiality requirement is governed

10

by § 3729(b)(4) or derived directly from the common law," *id.* at 2002, because it saw no meaningful difference between these formulations.

By embracing the "natural tendency" test codified in the False Claims Act and enshrined in the common law, *Escobar* makes clear that materiality is determined through a holistic assessment of the tendency or capacity of the undisclosed violation to affect the government decision maker. The Court did not impose a new requirement – contrary to both the FCA and the common law – that the United States (or a relator) must demonstrate that the government *would actually* refuse payment. The examples the Court provided to illustrate when a matter is material demonstrate this point. Citing treatises on both tort and contract law, the Court explained that a matter is material if either a "reasonable person would attach importance" to it or "the defendant knew or had reason to know" that government attached importance to it. *Id.* at 2002-03 (citations omitted). This test makes clear that the Supreme Court was not establishing a new requirement that the United States show that a claim *would not* have been paid or even that it *would likely* not have been paid. Indeed, the principal authorities the Court relied upon in *Escobar* confirm that "it is not necessary to materiality that a misrepresentation have even been the paramount or decisive inducement, so long as it was a substantial factor." 26 R. Lord, Williston on Contracts § 69:12 (4th ed. 2003). *See also Kungys*, 485 U.S. at 770 ("It has never been the test of materiality that the misrepresentation or concealment would *more likely than*

*not* have produced an erroneous decision, or even that it would *more likely than not* have triggered an investigation.") (emphases in the original).

In short, the Supreme Court did not impose a heightened test for materiality beyond the "natural tendency" test codified in the False Claims Act, entrenched in the common law, and applied by this Court and others. *See United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 916-17 (4th Cir. 2003) (explaining that the materiality inquiry focuses on the "potential effect of the false statement when it is made, not on the actual effect of the false statement when it is discovered"); *United States ex rel. Feldman v. Van Gorp.*, 697 F.3d 78, 96 (2d Cir. 2012) (same); *United State ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1228-29 (11th Cir. 2012); *United States ex rel. Loughren v. Unum Group*, 613 F.3d 300, 307 (1st Cir. 2010); *United States ex rel. Longhi v. United States*, 575 F.3d 458, 469-70 (5th Cir. 2009); *United States v. Rogan*, 517 F.3d 449, 452 (7th Cir. 2008).[3]

The Supreme Court also validated this Court's prior holding that it is not necessary for a requirement to be expressly designated as a condition of payment in

---

[3] The various factors the Supreme Court identified as relevant to the materiality inquiry confirm that *Escobar* did not *sub silentio* depart from the statutory and common law definitions of materiality and endorse an "outcome-materiality" standard. If the Court had intended materiality to turn solely upon whether the government would *actually* have denied payment had it known of the fraud, it would not have been necessary to identify any other factors relevant to the multi-pronged materiality inquiry. Indeed, the Court stressed that, even where the government has actually paid a claim with knowledge of its falsity, such action only constitutes "very strong evidence that those requirements are not material." *Escobar*, 136 S Ct. at 2003. That holding is directly at odds with an outcome-materiality standard.

order to be material. *See Escobar*, 136 S. Ct. at 2001-02; *Triple Canopy*, 775 F.3d at 637 n.5. The Court explained that "the Government's decision to expressly identify a provision as a condition of payment is relevant but not automatically dispositive." *Escobar*, 136 S. Ct. at 2002. Moreover, the example the Court provided of a material contract breach – where the government ordered guns but "failed to specify that the guns it orders must actually shoot," *id.* at 2001 – is strikingly similar to the facts of this case. Just as the Supreme Court found that a "reasonable person would realize the imperative of a functioning firearm," *id.*, a reasonable government contractor would recognize the imperative of guards with the training and ability to shoot straight.[4]

The other factors identified by the Supreme Court as relevant to the materiality inquiry further confirm that Triple Canopy's violations of the marksmanship requirement had a natural tendency to influence the Army's payment decisions and were therefore material. These factors include whether the violation goes to the "essence of the bargain," *id.* n.5 (quoting *Junius Constr. Co. v. Cohen*, 257 N.Y. 393, 400 (1931)), whether the violation is significant or "minor or insubstantial," *id.*, and

---

[4] The Supreme Court's defective gun example illustrates that Triple Canopy either knew, or should have known, that requirements as fundamental as guns that function properly, or guards with the ability to shoot straight, are material. As the Court explained, "because a reasonable person would realize the imperative of a functioning firearm, a defendant's failure to appreciate the materiality of that condition would amount to 'deliberate ignorance' or 'reckless disregard' of the 'truth or falsity of the information' even if the Government did not spell this out." *Id.* at 2001. Under that same reasoning, Triple Canopy plainly knew that the marksmanship requirement was material to the Army's payment decision even though the Army did not expressly designate that requirement as a "condition of payment."

13

whether the government took action in this case or other cases when it had knowledge of similar violations, *id.* at 2003–04.

The violations of the marksmanship requirement alleged in this case go "to the very essence of the bargain" the Army struck with Triple Canopy in contracting for security personnel to protect its military bases. As this Court observed, "common sense strongly suggests that the Government's decision to pay a contractor for providing base security in an active combat zone would be influenced by knowledge that the guards could not, for lack of a better term, shoot straight." *Triple Canopy*, 775 F.3d at 637-38. Nothing in *Escobar* calls this conclusion into question.

Likewise, Triple Canopy's violations were not "minor or insubstantial." On the contrary, *none* of the guards Triple Canopy supplied to the Army passed the required marksmanship test at any time during the year that they served as "guards."

The Supreme Court also indicated that how the government has treated violations the same or similar to the ones alleged may provide "proof of materiality." *Escobar*, 136 S. Ct. at 2003. This sort of evidentiary inquiry should not normally provide a basis for negating well-pleaded allegations of materiality on a motion to dismiss, where the sole question is whether the complaint plausibly alleges a violation of the statute. But there can be no serious doubt that this factor supports a finding that the violations of the marksmanship requirement alleged here were material. Triple Canopy has never argued, much less made any showing, that the Army routinely excuses violations of similar contract terms going to the very essence of the services it

14

bargained for, and the government's actions in this case refute any such argument. For example, the Army did not renew its contracts with Triple Canopy, and the United States intervened in the relator's *qui tam* action. These actions confirm the significance of the violations and the importance the government attaches to them.

Finally, Triple Canopy's own actions underscore both that its violations were material and that it knew its violations were material. As this Court recognized, the best evidence that Triple Canopy's violations were material is that it actively tried to conceal them. "If Triple Canopy believed that the marksmanship requirement was immaterial to the Government's decision to pay, it was unlikely to orchestrate a scheme to falsify records on multiple occasions." *Triple Canopy*, 775 F.3d at 638. In sum, the factors the Supreme Court identified as relevant to the materiality inquiry collectively show that the undisclosed (and actively concealed) violations of the marksmanship requirement alleged in the government's complaint were material.

## CONCLUSION

For the foregoing reasons, this Court should hold that the United States has stated valid claims for relief under the FCA and remand for further proceedings. In the alternative, the Court should remand with instructions to allow the government to file an amended complaint adding additional allegations to satisfy the criteria the Supreme Court has now identified as relevant to the materiality inquiry.

Respectfully submitted,

DANA J. BOENTE
 *United States Attorney*

BENJAMIN C. MIZER
 *Principal Deputy Assistant*
*Attorney General*

RICHARD W. SPONSELLER
GERARD MENE
CHRISTINE ROUSHDY
 *Assistant United States Attorneys*
 *U.S. Attorney's Building*
 *2100 Jamieson Avenue*
 *Alexandria, VA 22314*

MICHAEL S. RAAB

/s/ Charles W. Scarborough
CHARLES W. SCARBOROUGH
 *(202) 514-1927*
 *Attorneys, Appellate Staff*
 *Civil Division, Room 7244*
 *U.S. Department of Justice*
 *950 Pennsylvania Avenue, NW*
 *Washington, DC 20530*

AUGUST 2016

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2016, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.

The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ Charles W. Scarborough
CHARLES W. SCARBOROUGH
*Counsel for the United States*